IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC. | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-14-2046 |
| | : | |
| | : | |
| RUMORS INC. | : | |
| T/A RUMORS BAR & GRILL | : | |

## MEMORANDUM

J & J Sports Productions, Inc. ("J & J") sues Rumors Inc. ("Rumors"), a Baltimore bar and grill, for the unauthorized broadcast of a boxing match in violation of 47 U.S.C. §§ 553, 605 and conversion. After entry of default against Rumors for failure to defend itself, J & J moved for a default judgment, seeking $151,500 in damages. No hearing is necessary to resolve that motion. *See* Local Rule 105.5 (D. Md. 2014). For the reasons explained below, J & J's motion will be granted but the damages award will be adjusted downward from the exorbitant figure J & J proposes.

## BACKGROUND

J & J is a California corporation that distributes sports programming. (*See* Compl. 2–3, ECF No. 1.) It purchased the exclusive television distribution rights to a program featuring a boxing match between Manny Pacquiao and Timothy Bradley for the WBO Welterweight Championship, along with undercard fights and accompanying commentary (the "program"), which aired on June 9, 2012. (*See* Compl. 3.) J & J subsequently entered sublicensing agreements with commercial establishments, including establishments in Maryland, authorizing those entities to exhibit the program to their patrons. (*See* Compl. 3.) In an affidavit appended

1

to J & J's complaint, a private investigator declared that early in the morning of June 10, 2012, he paid a $5 cover charge to enter Rumors, where he observed the program playing on five televisions in the establishment. (*See* Compl., Attach. 1, Osgood Aff. 1, ECF No. 1-1.) The investigator estimated that 87 people were present at that time. (*See* Osgood Aff. 2.) According to the rate card for the program, J & J would have charged $2,200 to exhibit the program publically to 87 people. (*See* Mot. Default J., Ex. 4, ECF No. 9-4.) That rate card, as well as J & J's initial licensing agreement, confirm that the program was transmitted via encrypted, closed-circuit television. (*See* Mot. Default J., Exs. 4–5, ECF Nos. 9-4, 9-5.)

Although J & J properly served Rumors, (*see* Return of Service, ECF No. 5), Rumors never answered the complaint or otherwise defended itself. The clerk accordingly entered a default, as Federal Rule of Civil Procedure 55(a) requires. (*See* Order of Default, ECF No. 7.) J & J subsequently moved for a default judgment in its favor.

## ANALYSIS

"[D]efault judgment 'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). "Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also* Fed. R. Civ. P. 8(b)(6). But "'[t]he defendant is not held . . . to admit conclusions of law.' . . . The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought . . . ." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (first omission in original) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515

2

F.2d 1200, 1206 (5th Cir. 1975)).

**I. Liability**

J & J seeks to enforce both "sections 605 and 553 of 47 U.S.C., which are provisions of the Federal Cable Act that address different modalities of so-called 'cable theft.'" *J & J Sports Prods., Inc. v. MayrealIII, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012). Section 553 prohibits the unauthorized interception or receipt of certain cable communications, 47 U.S.C. § 553(a), while section 605 proscribes the unauthorized interception or receipt of certain "radio" communications, 47 U.S.C. § 605(a), including at least "digital satellite television transmissions," *MayrealIII*, 849 F. Supp. 2d at 588 n.3.[1] In its complaint, J & J does not specify *how* Rumors intercepted the program. That omission is not fatal. "The complaint need not specify the precise method of interception, as pleading in the alternative is permitted . . . ." *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, Civil No. CCB-11-3272, 2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012). Instead, it need only allege, as it does here, that a business entity "intercepted and displayed the Program at its establishment, without authorization from [J & J], on a particular date and at a particular time." *Id.* Taking those factual allegations as true, the court is satisfied J & J has established a violation of either section 553 or section 605.

J & J cannot, however, recover under both section 553 and section 605. To hold otherwise would violate the maxim that "courts can and should preclude double recovery . . . ." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *Gen. Tel. Co. of the Nw., Inc v.*

---

[1] Authority is split on the scope of section 605 and thus its interaction with section 553. *See J & J Sports Prods., Inc. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 352 (5th Cir. 2014) (collecting cases). The Second Circuit, for example, has extended section 605 to prohibit interception of cable transmissions that originate as radio transmissions, creating substantial overlap with section 553. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996). Several other courts, however, have demurred, reserving for section 553 any interception of a cable transmission, regardless of whether it originates via radio transmission. *See, e.g.*, *Mandell Family Ventures*, 751 F.3d at 352. The Fourth Circuit has not weighed in on the question. *See J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 674 (D.S.C. 2011). And this court need not answer it to resolve this motion.

3

*EEOC*, 446 U.S. 318, 333 (1980)). Accordingly, as J & J acknowledges, (*see* Mem. Supp. Mot. Default J. 5, ECF No. 9-2), "courts in this district consistently have held that a plaintiff cannot recover under both statutes for the same conduct," *J & J Sports Prods., Inc. v. Panana, LLC*, Civil No. WDQ-14-2047, 2014 WL 5454323, at *2 (D. Md. Oct. 24, 2014) (magistrate judge's report and recommendation) (collecting cases). Instead, courts entering default judgment in identical situations permit recovery under section 605 alone, on the ground that it authorizes a greater award than section 553. *Id.*

This prohibition against double recovery also precludes J & J's conversion claim. *See, e.g.*, *J & J Sports Prods., Inc. v. Royster*, Civil No. RWT-11-1597, 2014 WL 992779, at *3 (D. Md. Mar. 13, 2014). Even were it otherwise, J & J's conversion claim would fail for the alternative reason that its initial complaint does not state sufficient facts to sustain judgments even when those facts are admitted to be true. Historically, the common law tort of conversion protected only tangible property. *See UBS Fin. Servs. Inc. v. Thompson*, 94 A.3d 176, 185 (Md. 2014). Although Maryland courts later recognized conversion of "intangible property rights that are merged or incorporated into a transferable document," they "refuse . . . to extend the tort further, to cover situations in which the relevant document itself has not been transferred." *Id.* (quoting *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 965 (Md. 1999)). Even if intangible property such as a television program transmitted via satellite or cable could be converted under Maryland law, J & J's complaint contains no allegation that tangible documents evidencing its property interest in the program were transferred to Rumors. *See Joe Hand Promotions*, 2012 WL 5879127, at *4. Rumors could not, by its default, admit facts never alleged in the complaint, which leaves an inadequate basis for judgment on the conversion claim.

**II. Damages**

>J & J seeks statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). That provision entitles [J & J] to an award "as the court considers just," between a range of $1,000 to $10,000 for each unauthorized reception and publication of a radio communication by [Rumors] in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising [their] discretion in awarding damages under § 605(e)(3)(c)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. The other approach to calculating damages is to award a flat sum per violation.

*J & J Sports Prods., Inc. v. Quattrocche*, Civil No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010) (internal citations omitted). "Courts generally apply this [latter, flat-sum] approach when defendants have had repeat violations over an extended period of time." *J & J Sports Prods., Inc. v. Waters*, Civil No. FDW-12-779, 2013 WL 2948318, at *4 (W.D. N.C. June 14, 2014).

Here, there is no indication that Rumors has engaged in similar conduct in the past, rendering the flat-sum approach inapplicable. J & J indicates that Rumors showed the program at a time when approximately 87 people were present in the bar after paying a $5 cover charge. Before any concession sales, then, Rumors realized roughly $435 in profit from the program. *See, e.g.*, *Quattrocche*, 2010 WL 2302353, at *2 (applying this methodology); *Royster*, 2014 WL 992779, at *4 (same). J & J does not offer any evidence as to the price each of Rumors' patrons might have paid had they purchased the program on their own. If Rumors had purchased a license, however, it would have paid $2,200 to exhibit the match to 87 individuals. *See J & J*

5

*Sports Prods., Inc. v. Greene*, Civil No. DKC-10-105, 2010 WL 2696672, at *5 (D. Md. July 6, 2010). "This Court elects to award the greater amount . . . of statutory damages," *Royster*, 2014 WL 992779, at *4, equal to the $2,200 Rumors would have paid to exhibit the program legally to 87 people.

J & J next demands enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), which authorizes "the court in its discretion . . . [to] increase the award of damages . . . by an amount of not more than $100,000 for each violation" of the provision. "In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *Royster*, 2014 WL 992779, at *4 (quoting *Quattrocche*, 2010 WL 2302353, at *2).

Here, Rumors' exhibition of the program was willful, but not egregiously so. The program aired via encrypted, closed-circuit television. Accessing it thus required affirmative acts, for "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *J & J Sports Prods., Inc. v. Castro Corp.*, Civil No. 11-188, 2011 WL 5244440, at *4 (D. Md. Nov. 1, 2011) (alteration in original) (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). And Rumors charged a fee, albeit a very low one, to access the bar during its exhibition of the program. There is no indication, however, that Rumors engaged in such conduct before or since the incident or that it advertised the program. And its pre-concession profits from exhibiting the program were exceedingly modest.

"Where there are no allegations of repeat behavior or otherwise *egregious* willfulness warranting harsh punitive damages, courts in this Circuit have varied in awarding enhanced damages from no enhanced damages to up to five times the statutory damage amount." *Quattrocche*, 2010 WL 2302353, at *3 (emphasis added).  J & J has been on notice, at least since *Quattrocche*—which merely codified past judicial practice—that in a case of non-egregious willfulness it was not eligible to recover the maximum damages authorized by statute and that it could not recover damages under section 553, section 605, and conversion for the same conduct. Undaunted, J & J "has repeatedly filed motions seeking excessive damages in nearly identical cases, and the court has consistently addressed the limitations on damages for the same causes of action brought here."  *J & J Sports Prods., Inc. v. Sabor Latino Rest., Inc.*, Civil No. PJM-13-3515, 2014 WL 2964477, at *2 (D. Md. June 27, 2014).  In light of this recalcitrance, the court declines to award any enhanced damages.

## CONCLUSION

For the reasons stated above, J & J's motion for default judgment will be granted as to J & J's claim that Rumors violated 47 U.S.C. § 605.  Judgment will be granted in favor of J & J against Rumors in the amount of $2,200.

A separate order follows.


November 21, 2014                                            /S/
Date                                                        Catherine C. Blake
                                                            United States District Judge